Entered: August 29th, 2019
Signed: August 29th, 2019



THOMAS J. CATLIOTA
U.S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | * | Case No.   18-19974 |
| William Mark Wood | * | Chapter   7 |
| Debtor | * | |
| * * * * * * * * * | | |
| Christopher Montgomery | * | |
| Plaintiff | * | |
| vs. | * | Adversary No.   18-00354 |
| William Mark Wood | * | |
| Defendant | * | |
| * * * * * * * * * * * * * * | | |

## MEMORANDUM OF DECISION

Plaintiff Christopher Montgomery brings this action seeking to deny a discharge to defendant/debtor William Mark Wood and to except from discharge a debt defendant owes plaintiff. Before the court is the motion for summary judgment filed by plaintiff and opposed by defendant. ECF 24, 33. Because the uncontroverted facts are that defendant failed to maintain any financial records for his business, including even the check register that would enable the parties to determine the use of the proceeds of plaintiff's insurance policy and other funds, the court will deny defendant's discharge under 11 U.S.C. §727(a)(3).

1

Further, the undisputed fact is that defendant operated his company Wood Works, Inc. (the "Company") for more than nine years after its charter was forfeited, and at all times relevant to this case. The question arose at the hearing held on July 23, 2019, whether defendant is personally liable for the debts of the Company, and what significance the forfeiture had to this proceeding. At the conclusion of the hearing, the court required briefs on the question, filed by the parties at ECF 65 and 67. For the reasons stated herein, the court concludes that, because under Maryland law defendant is personally obligated for the debts of the Company that arose during forfeiture, his obligation under §727(a)(3) to maintain financial records extends to the business of the forfeited Company.

The court has subject matter jurisdiction under 28 U.S.C. §§1334(b), 157(a) and (b)(1) and Local Rule 402 of the United States District Court for the District of Maryland. This matter is a "core proceeding" under 28 U.S.C. §157(b)(2)(A), (B), (I) and (J) and the court has constitutional authority to enter a final order under the standards of *Stern v. Marshall*, 564 U.S. 462 (2011).

## Facts

The uncontroverted facts relevant to this decision are as follows:

Defendant was the sole owner and President of the Company, which performed home improvement work. ECF 6, ¶8. He was the Company's primary, if not sole, officer and the person through whom the Company acted at all relevant times. In his own words, the business was a "one man operation." ECF 47-10, Interrog. Answer 13.

On or about February 2, 2018, defendant, purportedly in the name of the Company, entered into a contract with plaintiff to repair fire damage to plaintiff's home. The cost of the repairs was to be paid by insurance proceeds. The cost totaled $132,643 pursuant to an insurance

estimate which the parties refer to as the Crawford estimate. ECF 47-3. Defendant received two disbursements of the insurance proceeds, each in the amount of $44,214.

Defendant maintained no financial records for himself or the Company. He admits he "did not pay close attention to record keeping and accounting details." ECF 47-10, Interrog. Answer 13. He deposited all business funds into a single bank account and withdrew funds for personal and business uses. He testified in deposition that he could not determine from reviewing the bank statements for what purpose various cash withdrawals or checks were made, whether the funds were used for business or personal expenses or, if for business expenses, for which of his projects they were used. He testified that he would need the check register to make those determinations, and he could not produce the register. Even after plaintiff obtained copies of the checks by subpoena to the bank, defendant could only guess at the source and use of the funds in the bank account and has never been able to account fully for the insurance proceeds.

The Company was incorporated under the laws of Maryland. The Company forfeited its corporate charter in 2009. Therefore, defendant conducted business in the name of the forfeited Company for more than nine years, including at all times relevant to this proceeding. At least as of the hearing on the motion, the Company's charter had not been revived.

Defendant filed for Chapter 7 relief on July 28, 2018. Plaintiff timely brought this adversary proceeding seeking a determination that a debt from defendant should be excepted from discharge under 11 U.S.C. §§523(a)(2)(A), (a)(4) and (a)(6), and that defendant's discharge should be denied under 11 U.S.C. §§727(a)(3) and (a)(4). He contends defendant fraudulently diverted the insurance proceeds, made misrepresentations about the work performed on his house, hid damage to the house, and made a false oath during the bankruptcy case.

**Conclusions of Law**

*Defendant's Personal Liability.*

It is well established in Maryland that "[a] corporation, the charter for which is forfeit, is a legal non-entity; all powers granted to [the corporation] . . . were extinguished generally as of and during the forfeiture period." *Dual Inc. v. Lockheed Martin Corp.,* 857 A.2d 1095, 1101 (Md. 2004). Maryland law is "unmistakably clear" that, after forfeiture, "the powers conferred by law on the corporations . . . are inoperative, null, and void as of the date of the proclamation, without proceedings of any kind at law or in equity." *Mintec Corp. v. Miton*, 392 B.R. 180, 184 (D. Md. 2008) (quoting Md. Code Ann., Corps. & Ass'ns §3-503(d)). "Once the charter of a corporation is forfeited, it is no longer governed by its board of directors *qua* board of directors and, because of the general extinguishment of its corporate existence, it no longer has officers or a resident agent." *Mintec Corp.*, 392 B.R. at 187. Knowingly transacting business in the name of a forfeited corporation is a crime in Maryland. Md. Code Ann., Corps. & Ass'ns §3-514(a).

For these reasons, it also has long been recognized in Maryland that "[p]ersons who continue business operations and incur debts in the name of a forfeited corporation, after forfeiture and prior to revival, are individually liable for such debts." *In re Hare*, 205 F. Supp. 881, 883 (D. Md. 1962); *see also Etienne v. Ameri Benz Auto Service, LLC*, 2016 WL 1222569 (D. Md. 2016). In *Hare*, an involuntary petition was filed against the principal officer and owner of 98% of the stock of Hare Bros., Inc. The alleged debtor operated the business as a forfeited corporation for seven and a half years after forfeiture. The Referee dismissed the involuntary petition on the grounds that the alleged debtor could not be liable for the obligations of the company because "the fact that Hare Bros., Inc might be revived" was a bar to pursuing the principal for the obligations of the company. *In re Hare*, 205 F. Supp. at 882. The District Court disagreed. It concluded that, where the operations of the company were continued for seven and

4

a half years without revival, "it would be unconscionable to permit the alleged [debtors] the defense that the corporation continues to enjoy a de facto status and insulates them from personal liability." *Id*. at 884.

*Hare* applies here.  For more than nine years, defendant continued to do business in the name of the Company after its charter was forfeited.  Even more pertinent here, defendant, as a one-man operation, negotiated the contract with plaintiff, entered into the contract, collected and spent the insurance proceeds, and performed (or failed to perform) under the contract all while the Company's charter was forfeited.  As in *Hare*, "it would be unconscionable to permit the [defendant] the defense that the corporation continues to enjoy a de facto status and insulates [him] from personal liability." *Id*. at 884 (citations omitted).  Defendant is personally liable for the debts of the Company.

Further, Defendant is not protected by Md. Code Ann., Corps. & Ass'ns. §3-515.  After forfeiture, "the directors of the corporation shall manage its assets for purposes of liquidation." *Id.* at §3-515(a).  The directors must collect and distribute assets, satisfy debts, and distribute the remaining assets to shareholder.  *Id*. at §3-515(b).  The directors may:

> (1) Carry out the contracts of the corporation;
> (2) Sell all or any part of the assets of the corporation at public or private sale;
> (3) Sue or be sued in the name of the corporation; and
> (4) Do all other acts consistent with law and the charter of the corporation necessary or proper to liquidate the corporation and wind up its affairs.

*Id*. at §3-515(c).

By the plain language of the statute, directors are only authorized to manage a corporation "for purposes of liquidation." *Id.* at §3-515(a).  Defendant does not contend he was undertaking the liquidation of the Company during the more than nine years its charter was forfeited.  To the contrary, for many years after forfeiture he entered into numerous construction

contracts with plaintiff and others, received payments, and performed (or failed to perform) under those contracts. Defendant was not acting under Corps. & Ass'ns. §3-515(a).

*Summary Judgment Under §727(a)(3).*

Summary judgment under Fed. R. Civ. P. 56, made applicable to these proceedings under Fed. R. Bankr. P. 7056, is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. One of the principal purposes of summary judgment is to isolate and dispose of all factually unsupported claims or defenses. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). To that end, the court considers all evidence in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (all justifiable inferences are drawn in the non-movant's favor). Under Rule 56, the court shall enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a motion for summary judgment is supported as provided in the Rule, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. Proc. 56(e). The nonmovant may rely on any evidentiary materials listed in Rule 56(c), except the motions themselves. *Celotex*, 477 U.S. at 325. A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 247.

Although plaintiff seeks summary judgment on all counts in the complaint, the court addresses only his claims under 11 U.S.C. §727(a)(3). That section provides:

>   (a)   The court shall grant the debtor a discharge, unless
>   \*     \*     \*     \*     \*
>   (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and

papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

§727(a)(3). "The purpose of Section 727(a)(3) is to give creditors sufficient information from which they can assess the debtor's estate and general financial posture." *In re Sieber,* 489 B.R. 531, 549 (Bankr. D. Md. 2013) (quoting *Union Bank of the Middle East, Ltd. v. Farouki*, 133 B.R. 769, 780-781 (Bankr. E.D. Va. 1991)).

The Fourth Circuit Court of Appeals addressed §727(a)(3) in *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 355 (4th Cir. 2007):

> "[C]ourts have consistently determined that a debtor's books "need not be perfect nor follow any particular system." *Noroian v. Hern,* 422 F.2d 1092, 1094 (9th Cir. 1970).
>
> \*   \*   \*   \*   \*
>
> The essential requirement of § 727(a)(3) under these authorities is, as the Third Circuit has explained, that the records "sufficiently identify the transactions so that intelligent inquiry can be made of them. The test is whether there is available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained." *Meridian Bank,* 958 F.2d at 1230 (internal quotation marks omitted);
>
> \*   \*   \*   \*   \*
>
> We are content with the principle that a bankruptcy debtor is not required to maintain perfect records. A debtor is, however, obliged by the statute to preserve sufficient and adequate financial records to enable the court and the parties to reasonably ascertain an accurate picture of his financial affairs."

*French*, 499 F.3d at 355 (citations to supporting authority omitted). Under §727(a)(3), the objector bears the burden of proof by a preponderance of the evidence that the debtor failed to preserve adequate financial records. *See In re Sieber*, 489 B.R. at 550. Intent is not an element of proof under §727(a)(3). *In re Scott,* 172 F.3d 959 (7th Cir, 1999).

In the instant case, defendant maintained no financial statements, ledgers, or similar records of any kind. He admits he did not pay close attention to record keeping or accounting

7

details. His record-keeping procedure was to deposit all business funds into a single bank account and withdraw funds from that account for business and personal use. He states his practice was to identify the sources of deposits and the use of funds by making notations in the checkbook registry. He testified in deposition he needed the registry to determine the source of funds in the bank account, whether the funds were for personal or business use, and if the latter, for which of his various construction projects were the funds used. Defendant, however, has never produced the checkbook registry.

Defendant's failure to produce the check registry has been an issue between the parties throughout prepetition litigation and during this case, as plaintiff has attempted to determine without success what was the disposition of the insurance proceeds. Defendant did not even produce the checks to the bank account, causing plaintiff to obtain copies of them by a subpoena to the bank. Plaintiff then attempted to piece together what happened to the insurance proceeds. Defendant contends that, after deducting an unexplained ten percent for "profit," plaintiff has been able to account for almost 83% of the proceeds. ECF 33 at 17. Thus, to this day, defendant himself cannot account for the insurance proceeds other than to say that plaintiff has come close to figuring it out based on subpoenas, guesses and assumptions about profit. A party should not have to subpoena a debtor's bank statements and checks, and then engage in a type of financial sudoku to determine what happened to proceeds of his insurance policy. *In re Juzwiak*, 89 F.3d 424, 428 (7th Cir. 1996) (the "courts and creditors should not be required to speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs.") *See also*, ECF 46, pp. 7-13 (plaintiff's charts attempting to determine defendant's use of funds). Defendant's failure to keep the check registry, or to have any other source of financial information or records, does not enable the court or the parties to reasonably

8

ascertain an accurate picture of his financial affairs, including, what he did with the insurance proceeds.

Defendant argues that a failure to preserve non-debtor corporate records falls outside the scope of §727(a)(3). That principle may be true in an appropriate case when applied to a separate, valid non-debtor legal entity. *In re Espino*, 48 B.R. 232, 235 (Bankr. S.D. Fl. 1985) (An individual's discharge cannot be denied under §727(a)(3) where the corporation whose books and records are being challenged is a "bona fide separate entity" from the debtor.). Here, however, the Company was defunct, and defendant functioned at all relevant times as a one-man operation. As stated above, in Maryland, the Company was no longer "governed by its board of directors *qua* board of directors and, because of the general extinguishment of its corporate existence, it no longer [had] officers or a resident agent." *Mintec Corp.*, 392 B.R. at 187. Thus, defendant lost the protection otherwise afforded to those who operate through a valid, separate, legal entity.

## **Conclusion**

For the foregoing reasons, the court will grant plaintiff's motion for summary judgment under 11 U.S.C. §727(a)(3).


cc:   Defendant/Debtor
      Defendant/Debtor's Counsel
      Plaintiff
      Plaintiff's Counsel
      Chapter 7 Trustee
      U.S. Trustee


**END OF MEMORANDUM OF DECISION**